UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re James D. Paulsen, | ) | Bankruptcy Case 19-82505 |
| Debtor. | ) | |
| | ) | Chapter 7 |
| | ) | |
| Joseph D. Olsen, Trustee for the | ) | |
| Estate of James D. Paulsen, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 20-96020 |
| v. | ) | |
| | ) | |
| James D. Paulsen, individually, | ) | Judge Thomas M. Lynch |
| Kathleen M. Paulsen, individually, | ) | |
| and James D. Paulsen and Kathleen | ) | |
| M. Paulsen, as trustees and | ) | |
| beneficiaries of the Paulsen Family | ) | |
| Trust dated January 19, 2019, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Before the court is the motion of the Defendants James D. Paulsen, the Debtor, and Kathleen M. Paulsen, his non-filing spouse, individually and as trustees and beneficiaries of a trust, to dismiss the adversary complaint of the chapter 7 Trustee. In his complaint, the Trustee principally seeks under sections 544(b) and 550 of the Bankruptcy Code to avoid and recover the Defendants' transfer of the Defendants' joint tenancy interest in their residence to a newly formed family trust for which they are trustees and hold beneficiary interests in tenancy by the entirety. The Paulsens

now bring their motion under Fed. R. Civ. P. 12(b)(6) seeking dismissal of the complaint for failure to state a claim. ("Motion," ECF No. 3.)

For the following reasons, the Defendants' Motion will be denied.

## I. PROCEDURAL BACKGROUND AND THE COMPLAINT

On October 29, 2019, the Debtor filed his petition for relief under chapter 7 of the Bankruptcy Code.  In his filing he listed his residence as 5110 North Ridgeway Road, Ringwood, Illinois (the "Homestead"), which he stated he owned by "Tenancy by the Entirety Held in Land Trust" and for which he claimed an exemption for 100% of the fair market value, up to any applicable statutory limit, under 735 ILCS 5/12-112 as property held in tenancy by the entirety.  Following the withdrawal of the original trustee and meeting of creditors, the chapter 7 Trustee filed his complaint.[1]

On a Rule 12(b)(6) motion, all well-pleaded facts in the complaint are taken as true, and all reasonable inferences are drawn in favor of the non-movant. *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). The Trustee's complaint contains the following factual allegations.

On January 19, 2019, the Paulsens transferred their interest in the Homestead as joint tenants to the newly formed Paulsen Family Trust Dated January 19, 2019 (the "Family Trust"), for which they are trustees and hold beneficiary interests in tenancy by the entirety, with the sole intent to avoid payment to McHenry Savings Bank (the "Bank").  The Bank had loaned the Debtor and his son $345,000 in 2014 and sued the Debtor on the outstanding debt in November 2018.  The Bank eventually

---

[1] *Complaint to Avoid and Recover Fraudulent Transfer and for Sale of Recovered Asset* ("Complaint," ECF No. 1.)

obtained a judgment against the Debtor and his son on October 8, 2019, in the amount of $348,531.15. Although the debt was secured by certain business real estate, the collateral was worth at most $275,000 according to the valuations listed in the Debtor's bankruptcy schedules. A financial statement the Debtor provided the Bank on January 24, 2019, listed his only other asset of value to be a bank account owned jointly with Kathleen with a value of $8,500. The Trustee alleges that, because the transfer placed the Homestead beyond the reach of the Bank and the value of the business property and the bank account is less than the amount of the debt to the Bank, the Debtor was rendered "balance sheet insolvent" at least with respect to the Bank's debt. (Compl. ¶ 26.)

The Complaint further alleges that as of the date the Debtor commenced his bankruptcy case, October 29, 2019, the Bank could have avoided the January 2019 transfer of the Homestead to the Paulsen Family Trust pursuant to 735 Ill. Comp. Stat. 5/12-112. The Trustee claims that avoidance power by operation of section 544(b) of the Bankruptcy Code. In Count I of the Complaint, the Trustee seeks to avoid the transfer. Count II seeks to recover for the bankruptcy estate either the property transferred or a monetary judgment against the family trust for the value of the property under 11 U.S.C. § 550. Finally, Count III asks the court to order the sale of the Homestead pursuant to section 363(h) to the extent the Trustee successfully recovers the Debtor's interest in the property.

The Defendants[2] present three grounds for dismissal.  First, they argue that the Complaint fails to state a claim because the Illinois exemption statute the Trustee relies upon, 735 ILCS 5/12-112, provides no such power.  Second, the Paulsens argue that the Trustee has not alleged a "transfer" for purposes of Section 544(b).  Third, they contend that the Trustee has failed to set out sufficient factual allegations to satisfy the pleading standards of Fed. R. Civ. P. 8 and 9.  These arguments relate to Count I of the Complaint.  The Defendants next argue that Counts II and III are "premised on the viability of Count I" and, therefore, should be dismissed as well.

## II.  DISCUSSION

### A.  Authority for Avoidance under 735 ILCS 5/12-112

The Trustee claims that 11 U.S.C. § 544(b) and 735 ILCS 5/12-112 provide him the authority to avoid the purported transfer.  Section 544(b) empowers a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowed] unsecured claim." 11 U.S.C. § 544(b).  Sometimes referred to as the "strong-arm provision of the Bankruptcy Code," section 544(b) gives the trustee the power to "avoid any transaction of the debtor that would be voidable by any actual unsecured creditor under state law." *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide)*, 139 F.3d 574, 577 (7th Cir. 1998).  "The trustee need not identify the creditor, so long as the unsecured creditor exists." *Id.*

---

[2] The motion to dismiss was filed by counsel for the Debtor only. However, during the July 28, 2020 hearing on the Motion, Debtor's attorney informed court that he also represents co-defendant Kathleen Paulsen, individually, and represents both Mr. and Ms. Paulsen in their capacities as trustees and beneficiaries.  He further stated that these co-defendants join the Debtor's Motion.  The attorney filed his appearance as counsel of record for those co-defendants later that day. (ECF No. 17.)

In *Image Worldwide*, the trustee successfully relied upon section 544(b) to avoid a transfer under Illinois' fraudulent transfer statute, 740 ILCS 160/5. The Illinois statute provides creditors with "an action for relief against a transfer or obligation under" the Illinois Uniform Fraudulent Transfer Act for "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." 740 ILCS 160/8. In the instant case, however, the Trustee relies upon 735 ILCS 5/12-112, nominally a debtor-exemption statute. The Defendants argue that the Illinois exemption statute does not provide an avoidance power and therefore does not supply authority for the Trustee to invoke the bankruptcy strong-arm clause. The Defendants are not correct on this point.

"When applying state law, federal courts are bound by the decisions of the state's highest court." *Gecker v. Estate of Flynn (In re Emerald Casino, Inc.)*, 867 F.3d 743, 765 (7th Cir. 2017) (citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940)). While the statute does not expressly provide an avoidance cause of action, the Illinois Supreme Court has held that where property has been transferred into a tenancy by the entirety, 735 ILCS 5/12-112 provides authority to avoid the transfer. *Premier Prop. Mgmt. v. Chavez*, 191 Ill. 2d 101, 114 (2000). The Court found that "[a]s amended, the tenancy by the entirety provision expressly includes its own standard to be used when a creditor challenges a transfer to that estate. . . . [T]his standard governs when a creditor challenges a transfer of property to tenancy by the entirety." *Id.* at 109-10. So ruling, the Court remanded the dismissal of an action originally brought under the Uniform Fraudulent Transfer Act "with directions that

[plaintiff] be afforded the opportunity to file an amended complaint under [735 ILCS

5/12-112, as amended]." *Id.* at 126.

> The tenancy by the entirety statute states that property

> held in tenancy by the entirety shall not be liable to be sold upon
> judgment entered on or after October 1, 1990 against only one of
> the tenants, except if the property was transferred into tenancy by
> the entirety with the sole intent to avoid the payment of debts
> existing at the time of the transfer beyond the transferor's ability
> to pay those debts as they become due.

735 ILCS 5/12-112.  The statute thus limits creditors' ability to enforce a judgment

upon the debtor's interest in property held in tenancy by the entirety.  The General

Assembly amended the statute in 1997 to add the parenthetical provision: "except if

the property was transferred into tenancy by the entirety with the sole intent to avoid

the payment of debts existing at the time of the transfer beyond the transferor's

ability to pay those debts as they become due." The Illinois Supreme Court

determined that this was "intended as a clarification of existing law and not as a new

enactment." *Premier Property,* 191 Ill. 2d at 108 (quoting 735 ILCS 5/12-112; 1997

Ill. Laws 5779).

*Premier Property* held that "the Fraudulent Transfer Act's actual intent

standard is not to be used to avoid transfers of property made to tenancy by the

entirety." 191 Ill. 2d at 111.  The 1997 amendment makes clear that intent is relevant

to tenancy by the entirety protection, but only to the extent that "the property was

transferred into tenancy by the entirety with the sole intent to avoid the payment of

debts existing at the time of the transfer beyond the transferor's ability to pay those

debts as they become due." 735 ILCS 5/12-112.  It appears that the Court was

concerned that the fraudulent transfer statute's "actual intent" standard provides less "protection from creditors for transfers of property to tenancy by the entirety" than the exemption statute. *Id.* at 110. The Court concluded from its examination of the amendment that the "General Assembly, by adopting the sole intent standard [in the exemption statute], has made it clear that it intends to provide spouses holding homestead property in tenancy by the entirety with greater protection from the creditors of one spouse than that provided by the Fraudulent Transfer Act." *Id.* at 110-11.

At least for purposes of bankruptcy law, there is no need to "avoid" a debtor's "transfer" of an interest in property to himself in tenancy by the entirety. The broad scope of property of the estate under Section 541(a) "includes an individual debtor's interest in property held as a tenant by the entirety." *In re Jaffe,* 932 F.3d 602, 607 (7th Cir. 2019). *See also* 11 U.S.C. § 363(h) (authorizing sale of estate's interest "in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety"). But as is the case here, *Premier Property* involved an action against both the judgment debtor and the non-debtor spouse. The debtor in *Premier Property* had been the sole owner of the property, which he then conveyed to himself and his wife as tenants by the entirety. 191 Ill. 2d at 103. His creditor sought to recover not only the debtor's interest but also the interest conveyed to the non-debtor spouse. As such, the Court's ruling that the exemption statute's "sole intent" standard applies to fraudulent transfers is not limited to actions against the debtor and the debtor's

interests in property held in tenancy by the entirety, but also applies to actions to reclaim interests transferred to the non-debtor co-tenant.

But in *Premier Property* the Illinois Supreme Court did more than hold that the exemption statute's "sole intent" standard *applies* to actions brought under the fraudulent transfer statute. Instead, it held that the fraudulent transfer statute does not apply to property transferred into tenancy by the entirety and the avoidance action must be brought under the exemption statute. Its finding leaves no ambiguity: "the amended tenancy by the entirety provision governs this case, to the exclusion of the actual intent standard of the Fraudulent Transfer Act." 191 Ill. 2d at 111.[3] *See also Brown v. Stacy (In re Stacy)*, 223 B.R. 132, 136 (N.D. Ill. 1998) (bankruptcy court should have granted motion to dismiss trustee's section 544 for failure to state a claim where "complaint fails even to reference § 12-112 and is brought entirely pursuant to the UFTA"); *Int'l Lease Fin. Corp. v. Tunca*, 2011 U.S. Dist. LEXIS 73808 (N.D. Ill. July 8, 21011) (denying defendant's motion to dismiss complaint challenging transfer to tenancy by the entirety brought under 735 ILCS 5/12-112, and finding did not have to cite Illinois Fraudulent Transfer Act). Bound by the decision of the state's highest court on this matter of Illinois law, this court finds that the Plaintiff here was not incorrect to bring the action under 735 ILCS 5/12-112, by means of the bankruptcy strong-arm provision. 11 U.S.C. § 544(b).

---

[3] So ruling, the Court remanded the case with the direction that Premier Property "be given the opportunity to amend its complaint to reflect the amendment to the tenancy by the entirety provision." *Id.*

## B. "Transfer"

The Defendants further argue that the "conveyance creating a tenancy by the entirety by married persons for their marital home is not within the definition of a transfer" for purposes of Section 544(b). (Motion, p. [3].)[4]  They assert that "[b]efore and after the deed creating the tenancy by the entirety, Debtor was a 50% owner of the marital residence and had a right of survivorship."  Therefore, they contend, the conveyance challenged by the Trustee falls outside section 101(54) "definition of transfer." (*Id.)* But the definitions of "transfer" under both the Bankruptcy Code and state law are broader than the restricted meaning urged by the Defendants. Moreover, their argument wholly disregards the alleged conveyance of the Defendants' interest in the Homestead to the Family Trust, evidencing further that their transaction was a transfer and not a mere re-titling of interests.

For purposes of the Bankruptcy Code

> The term 'transfer' means –
>   (A) the creation of a lien;
>   (B) the retention of title as a security interest;
>   (C) the foreclosure of a debtor's equity of redemption; or
>   (D) each mode, direct or indirect, absolute or conditional,
>      voluntary or involuntary, of disposing of or parting with–
>         (i)      property; or
>         (ii)     an interest in property.

11 U.S.C. §101(54).  The  Seventh Circuit has rejected the argument that a "transfer" requires assets to become "beyond the reach of the creditors or outside the jurisdiction of the bankruptcy court." *In re Smiley*, 864 F.2d 562, 565 (7th Cir. 1989) ("[W]e find

---

[4] Defendants' Motion disregards this court's longstanding rule that "each page of a document must be consecutively numbered."  See N.D. Ill. Bankr. L.R. 5005-3.C(7), 9013-1.B.

that the narrow definition for 'transfer' relied upon by the *Liller* court can no longer

be the law since the Bankruptcy Reform Act took effect."). Instead, the "Bankruptcy

Code defines 'transfer' broadly, as including 'each mode, direct or indirect, absolute

or conditional, voluntary or involuntary, of disposing of or parting with—(i) property;

or (ii) an interest in property.'" *Off. Comm. of Unsecured Creditors of Great Lakes*

*Quick Lube LP v. T.D. Invs. I, LLP (In re Great Lakes Quick Lube LP)*, 816 F.3d 482,

485 (7th Cir. 2016) (quoting 11 U.S.C. § 101(54) and finding termination of a lease to

be a "transfer").

Indeed, "the term 'transfer' encompasses every means and manner by which

property can pass from ownership and possession of another, and any transaction

that reduces or extinguishes valuable legal rights is subject to avoidance." *Terry v.*

*Paschall (In re Paschall)*, 403 B.R. 366, 374 (Bankr. E.D. Va. 2009). *See also Besing*

*v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1492 (5th Cir. 1993). This may include

the  reconveyance by spouses of property held in joint tenancy to tenancy by the

entirety. "This is so," a bankruptcy court noted, "because prior to the conveyance by

the Debtor, his fractional interests could have been subjected to satisfy the claims of

the [creditors], and they could not reach [those] interests after the conveyance

because they had no enforceable claim against . . . the Debtor's wife." *In re Miller*,

188 B.R. 302, 305 (Bankr. M.D. Fla. 1995). Citing with approval an Illinois appellate

decision, this court rejected an argument similar to the one made by the Defendants,

finding that "retitling property from joint tenancy to tenancy of the entirety is still a

conveyance." *In re Gillissie*, 215 B.R. 370, 379 (Bankr. N.D. Ill. 1997) (quoting *In re*

*Marriage of Del Giudice*, 287 Ill. App. 3d 215, 219 (1997)). *See also In re Whittom*,

220 B.R. 365 (C.D. Ill. 1998) (agreeing with *Gillissie* and *Del Giudice* that transfer was avoidable).

The Defendants inaccurately oversimplify the effect of the transactions at issue. It is not accurate to say, as they do, that the "Debtor was a 50% owner of the marital residence and had a right of survivorship" both before and after the transaction. (Motion, at p. [3].) First, their characterization of the ownership under either joint tenancy or tenancy in common to be a "50%" interest is not correct. That would describe a tenancy in common. For both joint tenancy and tenancy by the entirety, each tenant "possess[es] the entire estate, rather than a fractional share," meaning they each "have one and the same interest . . . held by one and the same undivided possession." *United States v. Craft*, 535 U.S. 274, 280 (2002) (citing 2 W. Blackstone, Commentaries on the Laws of England 180 (1766)).

The Defendants are also wrong to suggest the joint tenancy and tenancy by the entirety interests are identical. The two types of interest share many features, including "the right to use, to exclude, and to enjoy a share of the property's income," as well as the right of survivorship. *Id.* at 280-81. However, they differ in that "tenancies by the entirety cannot easily be severed unilaterally." *Id.* at 281. "[U]nilateral alienation of a spouse's interest in entireties property is typically not possible without severance." *Id.* In general, "neither [tenant] may have the power acting alone to alienate the property" and "so a tenant by the entirety may not sell or give away his interest in the property without the consent of the other tenant." *Loventhal v. Edelson*, 844 F.3d 662, 663-64 (7th Cir. 2016). In general, without consent of the other spouse the tenancy may not be destroyed except through death

of one tenant, divorce, or creation and maintenance by both spouses together of other property as a homestead. *Id.*; 765 ILCS 1005/1c.[5]   This restriction on alienation thereby alters the interest of the former joint tenant in the underlying property following the conveyance.

This difference becomes quite obvious when viewed through the allegations in the Complaint.   The Trustee alleges that the Debtor transferred ownership of his interest in the residence to a newly formed trust, receiving a beneficial interest in the trust in exchange.   While his economic interest in such beneficial interest may be similar to his prior interest in the residence, they are not identical.   The property is now owned by the trust.   The Debtor now can only sell or encumber the underlying property to the extent that he controls the trust.   He is entitled to proceeds or profits from the property only as the trust agreement provides.   Further, the Debtor's rights to proceeds or profits from the trust corpus now may be subordinated to such liabilities to the extent the trust incurs any liabilities.

Additionally, as a result of the disputed conveyance the Debtor has gone from being a direct owner of the property to an indirect owner.   This is a key difference between the Trustee's adversary proceeding and his objection to the Debtor's claimed exemption in the bankruptcy case.   (19-B-82505, ECF No. 46.) The Defendants point to the Trustee's objection to the exemption for the Debtor's beneficial interest in the trust to argue that there "is no need for or benefit from the Trustee's redundant filings." (Motion at p. [4].)   Because the Homestead was owned by the Family Trust

---

[5] The Bankruptcy Code also authorizes a trustee to sell property owned by the debtor with another held as tenancy by the entirety if certain conditions are met. 11 U.S.C. § 363(h).

at the time of the petition, only the Debtor's beneficial and other interests in the trust

became property of the estate.  Unless the Trustee is able to control the trust through

applicable state law, he needs to utilize the avoidance powers under the Bankruptcy

Code to obtain a direct interest in the property.  He can seek through section 363(h)

of the Bankruptcy Code to "sell both the estate's interest . . .  and the interest of any

co-owner in property in which the debtor had, at the time of the commencement of

the case, an undivided interest as . . . joint tenant, or tenant by the entirety." 11

U.S.C. § 363(h).

### C.  Pleading Standards Under Rules 8 and 9

Finally, the Defendants argue that the Complaint fails to sufficiently allege

fraud pursuant to Fed. R. Civ. P. 8 and 9. (Motion at pp. [2,7].)  We begin our analysis

by referencing our recent discussion at length of the standards by which the

sufficiency of the complaint must be measured under Rule 12(b)(6) based on

sufficiency of pleading found in the companion case, *McHenry State Bank v. Paulsen*

*(In re Paulsen)*, 2020 Bankr. LEXIS 2346, at *8-10 (Bankr. N.D. Ill. Sept. 1, 2020).

To state a claim under 11 U.S.C. § 544(b) and 735 ILCS 5/12-112, the Trustee

must allege sufficient factual content to allow the court to draw the reasonable

inference that the Debtor transferred property into tenancy by the entirety with the

sole intent to avoid the payment of debts owed to a creditor with an allowed unsecured

claim that existed at the time of the transfer beyond the Debtor's ability to pay those

debts as they became due. *See supra* Part II.A.  The chapter 7 Trustee has done so.

In his Complaint the Trustee alleges that on January 19, 2019, the Debtor and

Kathleen Paulsen executed a deed in trust and trust agreement.   By these

instruments they transferred their interest in the Homestead from themselves in joint tenancy to the Family Trust formed that day. (Compl. ¶¶ 5, 6, 14, 22.)  The Complaint references and attaches a purported copy of the Trust Agreement, which lists the Debtor and Kathleen Paulsen as "beneficiaries entitled to the earnings, avails, and proceeds of [the Homestead] according to the respective interests" as "tenants by the entirety." (Compl. ¶6, Ex. B.)  The Trustee further alleges that the Bank held an allowed unsecured claim as of the petition date. (Compl. ¶¶ 6, 12, 25d, 26d, 32.)  The Debtor's Schedule D listed the Bank as holding a claim of $342,000 secured by property worth only $275,000. (Compl. ¶26.)  As of January 19, 2019, the Debtor owed this debt on a business loan incurred on or about January 24, 2014, in an original principal amount of $345,000.  This debt subsequently was reduced to a judgment in the amount of $348,531.15 on October 8, 2019. (Compl. ¶¶ 10, 25.)  The Complaint further alleges that the Debtor transferred his interest in the Homestead to the Family Trust with the sole intent to avoid payment of the debt to the Bank. (Compl. ¶ 34.) Finally, the Complaint alleges that the Debtor was not able to pay his debts as they became due at the time he made the transfer. (Compl. ¶¶ 25, 34.)

The Trustee pleads sufficient facts to state a claim to relief that is plausible on its face and which rises beyond the mere speculative level.  The Defendants, however, characterize the Trustee's allegations to be "conclusory" and "irrelevant to the issue of sole intent" – particularly on the issue of "sole intent to avoid payment" under the tenancy by the entireties statute – to argue that the allegations and Count I fail to satisfy the specificity requirement of Fed. R. Civ. P. 9(b).  [Motion at pp. [4,7].)

As a preliminary matter, the court notes that Rule 12(b)(6) does not permit "piecemeal dismissals of parts of claims;  the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).  Rule 12(b)(6) "authorizes the dismissal of claims, not evidentiary rulings about the relevance of specific allegations set forth in a complaint." *McInerney v. Careerbuilder, LLC*, 2019 U.S. Dist. LEXIS 207720, at *9 (N.D. Ill., Dec. 3, 2019).  It is also somewhat incongruous to complain, as the Defendants' do here, that the allegations describing the transfer and surrounding circumstances are conclusory and at the same time argue them to be irrelevant.  But in any event, the Defendants fail to demonstrate that the allegations of Count I fail to satisfy Rules 9 and 12.

Rule 9(b) requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The court, therefore, need not decide whether the transfer into tenancy by the entirety with intent "to avoid payment" constitutes "fraud or mistake" for purposes of Rule 9(b),[6] for even assuming it does, the Complaint meets this standard.  Rule 9(b) requires "as a practical matter that [the plaintiff] must identify

---

[6] *But see, e.g., RBS Citizens, N.A. v. Gammonley,* 2015 U.S. Dist. LEXIS 27775 (N.D. Ill. Mar. 6, 2015) (finding complaint to avoid transfer into land trust owned as tenants by the entirety with sole intent to avoid payment met the standard set forth in Rule 9(b)); *Zurich Am. Ins. Co. v. Midwest Envtl. Servs.*, 2015 U.S. Dist. LEXIS 174480 (S.D. Ind. Dec. 21, 2015) ("Because Zurich's theories for relief allege at least in part that Central Asbestos participated in fraudulent conduct designed to permit Midwest to evade its legal obligations and otherwise to perpetrate fraud against Midwest's creditors, the complaint also must satisfy the particularity requirements of Fed. R. Civ. P. 9(b)." (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007))).

the 'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 646 (7th Cir. 2019). The Complaint does so, identifying with specificity that the Debtor and his wife transferred the couple's interest in the Homestead to the Family Trust when they executed the trust agreement and deed in trust on January 19, 2019. (*See, e.g.,* Compl., ¶¶ 14, 21-23, 26.) The Defendants further argue that Rule 9(b) requires the Complaint to set forth why the acts were not motivated by non-fraudulent intent. (Motion at pp. [5-7].) This argument, however, ignores Rule 9(b)'s express provision that intent "may be alleged generally." Fed. R. Civ. P. 9(b). The Complaint satisfies that requirement.

The Defendants here assert that certain allegations in the Complaint are only relevant to section 160/5(b) of the Illinois Uniform Fraudulent Transfer Act to argue that those allegations must be disregarded in determining whether Count I states a claim for relief. (Motion at pp [4-7].)   The UFTA lists 11 factors that may be considered in determining whether a transfer was made "with actual intent to hinder, delay or defraud" a creditor. 740 ILCS 160/5(b). According to the Defendants, because the court in *Premier Property* held that the "actual intent standard is not to be used" for transfers into tenancy by the entirety those factors are irrelevant. (Motion at p. [4].) The factors listed in section 160/5(b) are based on common law "badges of fraud." *See, e.g.,* 5 Collier on Bankruptcy ¶ 548.04 (16th ed. 2020). These factors are useful "[b]ecause transferors rarely admit to a wrongful intent, courts use recognized badges of fraud to regularize the inquiry into whether the circumstances surrounding the transfer are such that the requisite intent may be inferred." *Summitbridge Credit Invs. II, LLC v. Ahn*, 2017 IL App (1st) 162480-U (quoting *In re Grube*, 462 B.R. 663,

664 (Bankr. C.D. Ill. 2012)).   Many if not all of the factors are also potentially

circumstantial evidence of "intent to avoid payment" under section 5/12-112.   The

allegations that the Debtor transferred his interest in the Homestead collateral to a

trust in which he and his spouse were beneficiaries shortly after the Bank moved for

default judgment and that the transfer impeded the Bank's ability to enforce its

judgment, are indeed relevant to whether the Defendants transferred their interests

in response to the Bank's efforts to collect its debt and did so with the requisite intent

to avoid payment.

Similarly, allegations that the Homestead was the Debtor's primary

unencumbered asset and that the value of the Bank's collateral was less than the

amount of the debt bear upon the issue of the Defendants' motivation.[7]   Certainly,

the Defendants may challenge these factual allegations and challenge the factual

inference that this was the Debtor's sole intent in transferring the property.   But

"[w]hatever badges of fraud a court uses, no particular badge is necessary, nor is any

combination sufficient.  The matter is always factual—the presence of badges of fraud

permits but does not compel a finding of actual intent." 5 Collier on Bankruptcy ¶

---

[7] The Defendants seem to argue that the Complaint only alleges a value based on the Debtor's
schedules as of the petition date but must allege the specific value of the Bank's collateral as of the
date of the transfer. (Motion at p.[8].)  However, that value as of the petition date is relevant to section
544(b)'s requirement that there be a creditor with an allowed unsecured claim who may avoid the
transfer. 11 U.S.C. § 544(b).  Second, neither Rule 8 nor Rule 9 requires the plaintiff to allege a specific
value of the creditor's collateral as of the date of the transfer.  Such value may be relevant to the
Debtor's solvency at the time, which may be a factor to consider in determining the Debtor's intent
and ability to pay the debt.  The Trustee has alleged that the Debtor was unable to pay that debt as it
came due at the time of the transfer and was insolvent or made insolvent by the transfer. The
allegation that the Debtor scheduled the collateral as worth less than the debt as of the petition date–
less than a year after the transfer–suggests that the same may have been true as of the time of the
transfer if there were no intervening circumstances.  The Defendants are free to contest the value as
of the transfer date, but for purposes of their Rule 12(b)(6) Motion, the Trustee states a claim.

548.04 (16th ed. 2020). For purposes of Rule 12(b)(6) and acknowledging its standard that factual allegations shall be taken as true and reasonable inferences drawn in the nonmovant's favor, this court concludes that the Trustee states a plausible claim.

Defendants also challenge the Trustee's allegation that the Debtor was unable to pay his debt to the Bank and others as they came due as of the date of the transfer. Their reply memorandum, for example, argues that the Debtor was not behind on payments to the Bank at the time it filed its action on the debt and that the Debtor's son was jointly liable on the debt. (*Reply in Support of Motion to Dismiss*, p.4, ECF No. 15.) It does not appear that this argument was raised by their Motion, and for that reason alone should be deemed waived. *See Miller v. United States*, 2019 U.S. Dist. LEXIS 18658, at *14 (C.D. Ill. Feb. 6, 2019). Moreover, this argument introduces factual allegations outside the Complaint and therefore not proper for consideration in the Rule 12(b)(6) Motion. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806-07 (7th Cir. 2020) (noting that defendant's argument "drew on materials outside the complaint and was not appropriate for a Rule 12(b)(6) motion"). The Defendants will have the opportunity at the appropriate time to contest the plaintiff's factual allegations, but those allegations are to be taken as true for purposes of the pending motion under Rule 12(b)(6). *See McInerney*, 2019 U.S. Dist. LEXIS 207720 at *9. The Trustee alleges that the Debtor was unable to pay his debts as they came due at the time of the transfer. Moreover, the Complaint then includes additional factual allegations that make this allegation plausible. For example, it alleges that as of the time of the transfer, the Debtor had not paid the 2016 and 2017 real estate taxes owed for and in connection with the business property securing the Bank's debt and

had few assets other than that collateral and the Homestead. (Compl. ¶¶ 16, 25, 26.)
This is sufficient for purposes of Rule 12(b)(6).

## D.  Counts II and III

With respect to Counts II and III, the Defendants offer no other argument than
that they are ancillary to and "entirely premised on the viability of" Count I, such
that if Count I is dismissed, they must be dismissed for the same reasons. (Motion at
pp. [8-9].)  Because the court denies the motion to dismiss Count I, the motions to
dismiss Counts II and III also will be denied.

## III.  CONCLUSION

The Defendants' motion to dismiss the adversary complaint of the chapter 7
Trustee for failure to state a claim is DENIED.  The Defendants have until October
13, 2020, to answer the Complaint.  A separate order will be entered to give effect to
this determination.

DATE: September 29, 2020                    ENTER

_____
Thomas M. Lynch
United States Bankruptcy Judge